UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15cv168-FDW

JEREMIAH LAMONT LUKE,           )
                                )
        Petitioner,              )
                                )
vs.                              )        **ORDER**
                                )
CARLTON B. JOYNER,               )
                                )
        Respondent.              )
_____)

**THIS MATTER** is before the Court upon Jeremiah Lamont Luke's Amended Petition for Writ of Habeas Corpus, 28 U.S.C. § 2254. (Doc. No. 7.) Also before the Court is Respondent's Motion for Summary Judgement. (Doc. No. 10.)

## I.  BACKGROUND

Petitioner, a prisoner of the State of North Carolina, was convicted of first-degree murder on May 1, 2013, by a jury in Mecklenburg County Superior Court. State v. Luke, 765 S.E.2d 555, 2014 WL 4557185, at *1 (N.C. Ct. App. 2014) (unpublished). The North Carolina Court of Appeals summarized the State's evidence, as follows:

> On the evening of 14 November 2011, Defendant shot and killed Mikal LeGrande ("Mr.LeGrande") in the parking lot of an apartment complex in Charlotte. . . . [M]oments before the shooting, Mr. LeGrande was at the apartment complex with two acquaintances, Mr. Maye and Mr. McManus. Defendant approached the scene, whereupon Defendant and Mr. LeGrande began arguing. However, Mr. Maye broke up the argument, at which point Defendant stated "I got something for you," and walked towards his truck.
>
> Shortly after Defendant left, Mr. LeGrande walked with Mr. Maye and Mr. McManus towards Mr. Maye's apartment, which was in the same general direction as Defendant's truck. As Mr. LeGrande and his two acquaintances moved through the parking lot, Defendant reached into his vehicle, after which Defendant approached Mr. LeGrande, and engaged Mr. LeGrande in an argument. Mr.

1

> LeGrande put his hands in the air, but he was not holding a weapon or any other object, whereupon Defendant shot Mr. LeGrande. Mr. Maye ran from the scene and reported the incident to police two hours later. Mr. LeGrande died as a result of the gunshot. Police investigating the shooting found a box cutter with the blade sticking up in Mr. LeGrande's pocket.
>
> Defendant took the stand in his own defense. He testified that he was walking towards his truck when Mr. LeGrande approached him, threatening him with a knife. Defendant, therefore, reached into his truck for his gun and shot Mr. LeGrande in self-defense, without intending to kill Mr. LeGrande. Defendant stated that after shooting Mr. LeGrande, he drove away, throwing his gun out of the window of his truck; and that he hid from police for seven days, not returning to his home.

Id. Upon the jury's verdict, the court sentenced Petitioner to life-imprisonment without the possibility of parole. Id. Petitioner entered notice of appeal on the day judgment was entered. Id. A week after the trial, he filed a Motion for Appropriate Relief ("MAR") in the Mecklenburg County Superior Court, seeking relief for matters related to the trial. Id.

After conducting an evidentiary hearing, the Mecklenburg County Superior Court denied the MAR on the merits, by Order filed February 14, 2014. (Add. R. on App. 4-7, Resp't's Ex. 3, Doc. No. 11-4 at 132-35.) Petitioner appealed from his May 1, 2013 judgment and the denial of his MAR. Luke, 765 S.E.2d at *1. The North Carolina Court of Appeals found no error with respect to the MAR or the trial. Id. at *4. Discretionary review was denied by the North Carolina Supreme Court on December 18, 2014. State v. Luke, 766 S.E.2d 643, 644 (N.C. 2014) (Mem.).

Petitioner filed the instant federal habeas Petition on April 5, 2015, when he signed and placed it in the internal prison mail system. (Doc. No. 1.) While his Petition was pending in this Court, Petitioner filed a second MAR in the Mecklenburg County Superior Court on August 25, 2015, which was denied on October 6, 2015. (Order Re MAR, Resp't's Ex. 10, Doc. No. 11-11.) Petitioner filed a petition for writ of certiorari in the North Carolina Court of Appeals on

November 17, 2015, seeking review of the denial of his second MAR. The petition was denied on November 25, 2015. (Order Den. Cert. Pet., Resp't's Ex. 13, Doc. No. 11-14.)

On January 5, 2016, Petitioner moved to amend his § 2254 habeas Petition to add the claims raised in his second MAR. (Doc. No. 5.) The Court granted the Motion after finding that it was timely under the federal statute of limitations. (Doc. No. 6.) Petitioner placed his Amended § 2254 Petition in the prison mailbox on April 11, 2016. (Doc. No. 7.)

Respondent filed an Answer, Motion for Summary Judgment, and a Memorandum in Support on October 4, 2016. (Doc. Nos. 9-11.) Petitioner was notified of his right to respond to the Motion for Summary Judgement (Doc. No. 13), and he did so on November 28, 2016 (Doc. No. 14).

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

### B. The Antiterrorism and Effective Death Penalty Act of 1996

Review of Petitioner's claims that were adjudicated on their merits by the state courts is limited by the deferential standard set forth in the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), as construed by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 374-91 (2000). Under that standard, this Court may grant habeas relief on claims of constitutional error only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

A state court decision is contrary to clearly established federal law if "the state court arrives at a conclusion opposite to that reached by th[e United States Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite result]." <u>Williams</u>, 529 U.S. at 405; <u>Lewis v. Wheeler</u>, 609 F.3d 291, 300 (4th Cir. 2010) (quoting <u>Williams</u>, 529 U.S. at 405). A state court unreasonably applies federal law when it "identifies the correct governing legal rule from th[e Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case." <u>Williams</u>, 529 U.S. at 407.). A state court's determination that a claim fails on its merits cannot be overturned by a federal habeas court "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 131 S. Ct. 770, 786 (2011) (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)).

## III. DISCUSSION

### A. Fair Trial Claim

Petitioner claims that he was denied the right to a fair trial by an impartial jury due to juror bias. (Am. Pet., Ground One, Doc. No. 7.) During a break in the trial, Petitioner's brother observed one of the jurors in conversation with the mother of a key witness for the State, Art

4

Maye. Petitioner's brother brought the incident to the attention of Petitioner's attorney, who informed the prosecutor and the court. Upon learning about the contact, the trial court made inquiry of the juror, out of the presence of the other eleven jurors; and of Maye's mother separately, out of the presence of all twelve jurors.

> During the trial court's inquiry,
>
> the juror stated that she had spoken with Mr. Maye's mother; that she did not know the person she spoke to was Mr. Maye's mother; that she was wearing her juror badge; that the conversation involved the attire of someone passing by and the cold weather; that the conversation did not involve anything about the trial in any manner; and that the conversation would have no effect on her ability to be fair and impartial.
>
> Mr. Maye's mother [stated] that she did not see the juror's badge because the juror was wearing a coat; that the conversation involved the attire of someone passing by and of the location of the smoking area; and that the conversation did not involve anything about the trial in any manner.

Luke, 765 S.E.2d 555, 2014 WL 4557185, at *2. Both the prosecutor and defense counsel declined to ask questions of the juror and Maye's mother. (Trial Tr., Vol. III 458, 461; Resp't's Ex. 14, Doc. No. 11-15 at 524, 527.) Neither side moved for a mistrial. The trial court summarized its findings of fact as follows:

> the juror . . . acknowledged having had a conversation with a bystander during the break just prior to the Court's instructions this morning. The conversation turned out to be with the mother of Mr. Arterious Maye. The conversation was . . . outside the courthouse in the smoking area and involved questions of where to smoke, the attire of a passersby. There was no conversation with regard to this case either directly or indirectly by either [the juror] or Mr. Maye's mother. [The juror] has reported in open court that she received no information and the conversation with the party she was unable to identify at the time as being a relative of a witness. And would not in any way influence her decision making[.]

(Trial Tr., supra, at Vol. III 467, Doc. No. 11-15 at 533.) The court, thereafter, allowed the trial to continue.

Petitioner raised a claim alleging juror bias in his first MAR, denied February 14, 2014,

5

and on direct appeal. The North Carolina Court of Appeals concluded that "there was no evidence that the juror was biased or otherwise incapable of impartiality." Luke, 765 S.E.2d 555, 2014 WL 4557185, at *3.

"Due process alone has long demanded that, if a jury is to be provided to the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." Jones v. Cooper, 311 F.3d 306, 310 (4th Cir. 2002). The right to a fair "trial does not require a new trial every time a juror has been placed in a potentially compromising situation," however. Smith v. Phillips, 455 U.S. 209, 217 (1982). A fair and impartial jury means one "capable and willing to decide the case solely on the evidence before it[.]" Id. The Supreme Court "has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." Id. at 215 (citations omitted).

In addition to the aforementioned inquiry, the state court held an evidentiary hearing on Petitioner's claim of juror bias as part of the proceedings surrounding his first MAR. Therefore, the issue before this Court is simply whether the state appellate court made an unreasonable factual determination, based upon the evidence before it, when it concluded that Petitioner failed to prove the juror was biased against him. The state court's determination is unreasonable if there is not "fair support in the record for" its conclusion. See Patton v. Yount, 467 U.S. 1025, 1038 (1984).

This Court has read the transcript of the trial court's inquiry of the juror and Maye's mother and notes that while there was a discrepancy between the two women regarding the length of their conversation, their reports of what they discussed was accurately summarized by the North Carolina Court of Appeals. There is nothing in the trial record to support an allegation

of actual bias. Moreover, under the circumstances of this case, the presumed bias of Maye's mother cannot be imputed to the juror. The trial, including jury selection, lasted less than three days, and Maye's mother was a relative of one of the witnesses, not a relative of the victim. There would have been no reason for the juror to have associated Maye's mother with one side or the other, if the juror noticed her sitting in the courtroom at all.

In an effort to overcome these evidentiary problems, Petitioner asserted in his MAR that his brother not only witnessed the conversation between Maye's mother and the juror, but also overheard part of their discussion. (R. on App. 93, Resp't's Ex. 3, Doc. No. 11-4.) Petitioner attached to the MAR a notarized letter signed by his brother, Chad Luke, stating that Chad overheard Maye's mother tell the juror that "they needed a vote to get Jeremiah off the streets for good," and the juror respond "he will never see daylight again." (R. on Appeal, supra, at 99.) Chad also stated in the letter that he told his mother and Petitioner's attorney what he had heard. (R. on Appeal, supra.) Petitioner repeats these assertions in his Response to the Motion for Summary Judgment. (Resp. to Summ. J. Mot. 4-6, Doc. No. 14.)

At the February 10, 2014 evidentiary hearing on his MAR, Petitioner was represented by counsel. Counsel called two witnesses to testify – Petitioner and Petitioner's trial counsel. Neither testified that Chad Luke overheard some or all of the conversation between Maye's mother and the juror. Likewise, neither testified that Chad told Petitioner's attorney he had overheard the women's conversation. Furthermore, Chad's notarized letter was not introduced into evidence at the hearing.

"In an evidentiary hearing for appropriate relief where the judge sits without a jury the moving party has the burden of proving by the preponderance of the evidence every fact to support his motion." State v. Adcock, 310 S.E.2d 587, 608 (N.C. 1984) (citing N. C. Gen. Stat.

15A–1420(c)(5)). Petitioner failed to put forth any evidence at the hearing that Chad Luke overheard the conversation between the two women and told Petitioner's attorney about it. Moreover, Petitioner has not alleged that he was prevented by the State, or the state court, from calling Chad to testify at the February 10, 2014 hearing. Therefore, this Court may not consider the statements Chad allegedly overheard in determining whether Petitioner is entitled to relief on this claim. See Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").

In sum, there is "fair support in the record for" the North Carolina Court of Appeals' determination that there was no evidence "that the juror was biased or otherwise incapable of impartiality." Luke, 765 S.E.2d 555, 2014 WL 4557185, at *3. See Yount, 467 U.S. at 1038. Therefore, its rejection of Petitioner's fair trial claim was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[s]," § 2254(d)(2), and Respondent is entitled to summary judgment on this claim.

**B. Ineffective Assistance of Counsel for Failing to Move for a Mistrial**

Petitioner claims that trial counsel rendered ineffective assistance when he decided not to move for a mistrial based upon the contact between Maye's mother and the juror. (Ground Two. Am. Pet., Doc. No. 7.) Petitioner raised this claim in his first MAR and on direct appeal. The North Carolina Court of Appeals rejected the claim, holding that it was not "reasonably probable that the trial court would have granted [a] motion [for mistrial]." Luke, 765 S.E.2d 555, 2014 WL 4557185, at *4.

In Strickland v. Washington, the Supreme Court identified two necessary components of an ineffective assistance claim. 466 U.S. 668, 687 (1984). First, "the defendant must show that

counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

"[W]hen a petitioner's habeas corpus claim is based on alleged ineffective assistance of counsel . . . . [t]he AEDPA standard and the Strickland standard are dual and overlapping, and [the court] appl[ies] the two standards simultaneously rather than sequentially." Lee v. Clarke, 781 F.3d 114, 123 (4th Cir. 2015), *as amended* (Apr. 15, 2015) (quoting Richardson v. Branker, 668 F.3d 128, 139 (4th Cir. 2012)) (internal quotation marks omitted). Because both standards of review are "'highly deferential' to the state court's adjudication . . . , 'when the two apply in tandem, the review is doubly so.'" Lee, 781 F.3d at 123 (quoting Richardson, 688 F.3d at 139).

To succeed on this claim, Petitioner must demonstrate that the state appellate court's conclusion that he was not prejudiced by trial counsel's failure to move for a mistrial constituted an unreasonable application of Strickland.[1] See Richter, 562 U.S. at 102. Under North Carolina law, a trial judge "must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings . . . resulting in substantial and irreparable prejudice to the defendant's case." N. C. Gen. Stat. § 15A–1061. As a threshold matter, then,

---

[1] Because Petitioner cannot satisfy Strickland's prejudice prong, the Court need not assess whether he can meet the deficiency prong. See Bell v. Cone, 535 U.S. 685, 695 (2002).

9

Petitioner must show that the contact between Maye's mother and the juror "result[ed] in substantial and irreparable prejudice" to his case. In other words, he most show that he did not receive a fair trial by an impartial jury.

The Court already has determined there is "fair support in the record for" the appellate court's conclusion that there was no evidence of bias or an inability to be impartial on the part of the juror. Luke, 765 S.E.2d 555, 2014 WL 4557185, at *3. See Yount, 467 U.S. at 1038. Without a showing of "substantial and irreparable prejudice," Petitioner cannot demonstrate a reasonable probability that a motion for mistrial would have been granted. See § 15A–1061. Therefore, in keeping with its previous holding, this Court concludes that the state court did not apply Strickland unreasonably in determining that it was not "reasonably probable that the trial court would have granted [a] motion [for mistrial]" had counsel made one. Luke, 765 S.E.2d 555, 2014 WL 4557185, at *4.

Because he cannot show that the state appellate court unreasonably determined he was not prejudiced by counsel's decision not to move for a mistrial, Petitioner's ineffective assistance of counsel claim fails. Respondent is entitled to Summary Judgment on this claim, as well.

**C. Short-From Indictment**

Petitioner claims that the indictment charging him with murder was fatally defective because it did not sufficiently allege the essential elements of first-degree murder, specifically premeditation and deliberation. (Ground Three, Am. Pet., Doc. No. 7.) He argues that the short-form indictment that was used only alleged the elements of second-degree murder. Therefore, his argument continues, the state court did not have jurisdiction to enter judgment against him for first-degree murder. He also contends that use of the short-form indictment violated his right to due process because it failed to provide sufficient notice of the charged offense to allow him to

10

prepare a proper defense. The North Carolina Court of Appeals denied this claim on the merits. See Luke, 765 S.E.2d 555, 2014 WL 4557185, at *4.

As an initial matter, Petitioner's jurisdictional argument is not cognizable on federal habeas review. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). State jurisdictional issues generally do not fall within the scope of the "Constitution, laws, or treaties of the United States." See e.g. Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998); Smith v. Moore, 137 F.3d 808, 822 (4th Cir.1998) (refusing to entertain claim that jury instruction misstated South Carolina law). Moreover, an alleged defect in an indictment does not constitute a jurisdictional defect, as Petitioner maintains. See United States v. Cotton, 535 U.S. 625, 630–31 (4th Cir. 1985).

As for Petitioner's due process argument, "[e]lementary principles of due process require that an accused be provided reasonable notice of the charge against him. Hartman v. Lee, 283 F.3d 190, 194 (4th Cir. 2002) (citing Cole v. Arkansas, 333 U.S. 196, 201 (1948); In re Oliver, 333 U.S. 257, 273 (1948)). "Reasonable notice 'sufficiently apprises the defendant of what he must be prepared to meet.'" Stroud v. Polk, 466 F.3d 291, 296 (4th Cir. 2006) (quoting Russell v. United States, 369 U.S. 749, 763 (1962) (internal quotation marks omitted) (evaluating indictment)).

The United States Supreme Court has never addressed whether North Carolina's short-form indictment is adequate under either the Sixth or Fourteenth Amendments. The Fourth Circuit, on the other hand, upheld the constitutionality of the short-form indictment in its Hartman decision. In that case, the court held that because "there is only one common law crime of murder [under North Carolina law], which by statute is divided into two degrees, . . . a short-

form indictment that alleges the elements of common law murder is sufficient to satisfy the demands of the Sixth and Fourteenth Amendments."[2] 283 F.3d at 198-99; see also Allen v. Lee, 366 F.3d 319, 323-24 (4th Cir. 2004) (en banc). The elements of common law murder are codified in the short-form indictment statute, which provides that an indictment for murder is sufficient if, as is relevant here, it alleges "that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder" the victim. N.C. Gen. Stat. § 15-144.

Thus, "premeditation" and "deliberation," which Petitioner asserts had to be charged in the indictment, "merely constitute[ ] a means of committing the 'single common law crime of murder,' not . . . element[s] of a separate offense." Stroud, 466 F.3d at 295 (citing Hartman, 283 F.3d at 198-99 & n.6). The short-form indictment provides reasonable notice of the charge of murder in the first-degree on theories of premeditation and deliberation or felony murder because "[p]rosecution on these theories is sufficiently commonplace that a reasonable defendant charged with common law murder would foresee that he might have to defend against them." Stroud, 466 F.3d at 296-97.

Petitioner's murder indictment alleged all of the essential elements of North Carolina common law murder. (R. on App. 8, Resp't's Ex. 3, Doc. No. 11-4 at 12.) Therefore, he cannot show that the state court's rejection of his claim resulted in a decision that involved an unreasonable application of clearly established Federal law. See § 2254(d)(1). Consequently, Respondent is entitled to summary judgement on this claim.

**D. Ineffective Assistance of Trial Counsel Claims from Second MAR**

---

[2] "[T]he jury is required to determine the degree of murder (first or second) when it deliberates regarding the defendant's guilt." Hartman, 283 F.3d at 192.

Petitioner claims trial counsel was ineffective for failing to: 1) request a verdict of "not guilty by reason of self-defense"; 2) object to the trial court's "erroneous self-defense instructions"; and 3) object to the trial court's "erroneous malice instruction that relieved the state of its burden of proof." (Grounds 4(a)-(c), Am. Pet., Doc. No. 7.) Petitioner raised these claims in his second MAR, filed on August 25, 2015. (Resp't's' Ex. 9, Doc. No. 11-10.) The state court denied these claims on procedural grounds, and Respondent raises the defense of procedural default here.

As a general rule, "a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule." Burket v. Angelone, 208 F.3d 172, 183 (4th Cir. 2000.) North Carolina law proscribes procedural grounds for denial of an MAR. See N.C. Gen. Stat. § 15A-1419(a). Under § 15A-1419(a)(3), claims raised in an MAR that could have been raised on direct appeal, but were not, are subject to dismissal. Id. (providing for dismissal if "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the . . . motion but did not do so"). Citing § 15A-1419(a)(3), the state court concluded that Petitioner was in a position to raise all three of these ineffective assistance of counsel claims on direct appeal but did not do so. (Order Re MAR 2 ¶2, Resp't's Ex. 10, Doc. No. 11-11 at 3 ¶2.) The Fourth Circuit Court of Appeals has "consistently held that § 15A-1419(a)(3) is an independent and adequate state ground for purposes of procedural default." Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008).

Petitioner disputes the state court's conclusion that he could have raised these claims on direct appeal. He contends that the North Carolina appellate courts repeatedly have held that ineffective assistance of counsel claims must be raised in post-conviction MAR proceedings.

13

(Resp. to Summ. J. Mot. 8, Doc. No. 14.) Petitioner is incorrect.

Under North Carolina law, ineffective assistance of trial counsel claims that are apparent from the cold record must be brought by the defendant on direct appeal. See State v. Fair, 557 S.E.2d 500, 524 (N.C. 2001) (Ineffective assistance of trial counsel claims "brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing."). The Court has reviewed the record in this case and found nothing that calls into question the presumption of correctness accorded the state court's finding that these ineffective assistance of counsel claims could have been brought on direct appeal. See § 2254(e)(1). Therefore, § 15A-1419(a)(3) is an adequate and independent state procedural bar to these ineffective assistance of counsel claims.

A federal habeas court will not review a claim that is procedurally defaulted absent a showing of cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will occur if the habeas court declines to review the claim. See Wright, 151 F.3d at 160. Petitioner argues neither. Therefore, Petitioner's ineffective assistance of counsel claims are procedurally defaulted, and Respondent is entitled to summary judgment.

### IV.   CONCLUSION

The claims raised in the instant amended Petition are either procedurally defaulted or without merit. As such, the amended Petition shall be denied, and summary judgment granted to Respondent.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 7) is **DENIED**;

14

2. Respondent's Motion for Summary Judgment (Doc. No. 10) is **GRANTED**; and

3. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: December 5,

Frank D. Whitney
Chief United States District Judge